## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANTHONY TURIELLO, and THE
TURIELLO LIVING TRUST DATED
DECEMBER 18, 2008,

      Plaintiffs,

v.

CENTRAL SPRINKLER LLC, and
JOHNSON CONTROLS, INC.,

      Defendants.

Civil Action No. 25-497-GBW

## MEMORANDUM ORDER

Pending before the Court are seven discovery disputes, which have been fully briefed (D.I. 120; D.I. 121). Plaintiffs Anthony Turiello and The Turiello Living Trust Dated December 18, 2008 (together, "Plaintiffs" or "Turiello") move to compel Defendants Johnson Controls, Inc. and Central Sprinkler LLC (together, "Defendants" or "JCI") to produce (1) documents from October 1, 2021 to March 1, 2022; (2) transaction-related documents; and (3) financial reserves for tax exposure; as well as supplement their responses to Interrogatories and Requests for Admission ("RFA") regarding (4) support for damages calculations; (5) FARS testing and problems; (6) sales tax investigation; and (7) post-close disputes. *See* D.I. 107 ("Turiello's Opening Letter"). Defendants oppose Plaintiffs' requests. *See* D.I. 109 ("JCI's Response Letter"). For the following reasons, the Court grants-in-part and denies-in-part Turiello's motion to compel.

### I.    BACKGROUND

#### A.    Factual Background

Anthony Turiello founded Rescue Air Systems, Inc. ("RA" or "RAS") in 1993. D.I. 2 ¶ 16. RAS developed a system for providing life-saving air to firefighters, called the "Firefighter Air

Replenishment System" ("FARS"). *Id.* ¶ 2. In November 2021, "JCI became a Certified Installer ('CI') for FARS." D.I. 120 at 1. Around March 2022, Turiello and JCI began discussing JCI's potential purchase of RA. D.I. 2 ¶ 19. On October 5, 2022, JCI and Turiello signed the Purchase Agreement (the "Transaction"), in which JCI agreed to purchase RA for $75 million, with Turiello eligible for "up to $25 million in Earn-Out Payment[s] to be made in the future upon satisfaction of specified categories of milestones." *Id.* ¶ 20. The Purchase Agreement provided for $5.625 million of the purchase price to be placed in escrow "to satisfy any post-close adjustments and *bona fide* indemnifiable Losses incurred by Buyers." *Id.* ¶ 21.

On October 4, 2023, JCI sent Turiello an indemnification claim notice for approximately $14 million in losses for alleged breaches of the Purchase Agreement, claiming that FARS was defective. *Id.* ¶ 39; D.I. 120 at 1. Later, in 2024, JCI sent Turiello another indemnification claim, alleging that it suffered losses from Turiello's failure to pay sales taxes on products that RA purchased prior to JCI's acquisition. D.I. 2 ¶ 45; D.I. 79, Counterclaims ¶ 62.

### B.    Procedural Background

On April 24, 2025, Turiello filed a complaint alleging that JCI breached the Purchase Agreement by withholding the money held in escrow and a portion of the Earn-Out payments. D.I. 2 ¶¶ 51-52. JCI filed its amended answer on February 3, 2026, with Defendant Central Sprinkler LLC, alleging counterclaims for breach of multiple contracts, breach of warranty (as to one contract), declaratory judgments, and fraud. D.I. 79, Counterclaims ¶¶ 63-111.

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009).

2

The moving party "bears the initial burden of establishing the relevance of the requested information." *Thompson-El v. Greater Dover Boys & Girls Club*, C.A. No. 18-1426-RGA, 2022 WL 606700, at *2 (D. Del. Jan. 28, 2022). Once the moving party meets its burden, the burden shifts to the party resisting discovery to demonstrate that the discovery is irrelevant or not proportional to the needs of the case, taking into consideration "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Thompson-El*, 2022 WL 606700, at *2.

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* D. Del. LR 7.1.1 (requiring the moving party to make "a reasonable effort . . . to reach agreement with the opposing party").

## III.    DISCUSSION

Turiello's Opening Letter raises seven disputes. The Court addresses each in turn.

### A.    JCI Documents and Emails from October 1, 2021 to March 1, 2022 (RFP General Objection No. 8)

Turiello moves to compel JCI to collect and produce emails and documents from October 1, 2021 to March 1, 2022. D.I. 107 at 2. Turiello has adequately demonstrated that documents in this timeframe are relevant to JCI's fraud counterclaim because JCI was a Certified Installer of FARS for Turiello during this period, and thus, "was privy to information about FARS functionality . . . and should have known of any purported defects in the product it was installing."

3

D.I. 120 at 2. Documents regarding JCI's awareness of the functionality of FARS are relevant at least to whether JCI "acted in justifiable reliance" on Turiello's representations of FARS. *See* D.I. 79 ¶ 108. However, documents concerning JCI's work as a Certified Installer that do not implicate the functionality of FARS are not relevant or proportional to the needs of this case. Accordingly, the Court compels JCI to collect documents between October 1, 2021 and March 1, 2022 and to produce relevant, non-privileged documents in that timeframe, only to the extent that such documents discuss, concern, or refer or relate to the functionality of FARS.

### B.    Transaction-Related Documents (RFP Nos. 73, 75-79)

Turiello moves to compel JCI to produce "all documents and communications relating to the Transaction, the Purchase Agreement, due diligence, and Disclosure Schedules," as sought by Request for Production ("RFP") Nos. 73 and 75-79. D.I. 120 at 2. JCI contends that its "diligence into FARS or its internal discussion of the terms of the Purchase Agreement are not at issue, nor is the sale of RAS to JCI." D.I. 121 at 1. The Court finds that Turiello has adequately demonstrated that the information sought in RFP Nos. 73 and 75-79 is relevant to the case. *See* D.I. 120 at 2. In particular, JCI's fraud counterclaim alleges that Turiello "made false representations about [RAS] before the Parties signed the Purchase Agreement," D.I. 79 ¶ 102, and that JCI "acted in justifiable reliance on the false representations." *Id.* ¶ 108. Thus, JCI directly brought into question the conduct of the parties prior to completing the sale of RAS. The Court accordingly compels JCI to produce non-privileged documents responsive to RFP Nos. 73 and 75-79.

### C.    Financial Reserves for Tax Exposure (RFP No. 105)

Turiello moves to compel JCI to "produce documents concerning financial reserves, contingencies, or disclosures relating to RAS sales or use tax exposure." D.I. 120 at 2. Turiello reasons that, "if JCI did not reserve for unpaid tax liability on its books, that evidences the frivolity of its tax-related claims." *Id.* JCI responds that its decision concerning "how to finance its

4

potential exposure for millions in unpaid taxes RAS incurred before acquisition is irrelevant" to the action. D.I. 121 at 1-2. The Court agrees with JCI. Turiello has not adequately demonstrated how JCI's financial reserves relate to the breach of contract at issue in this action, nor how those reserves evidence the frivolity of any claims. Thus, the Court denies JCI's motion to compel with respect to RFP No. 105.

**D.      Support for Damages Calculations (Interrogatory Nos. 1, 4, 19-1; RFA No. 1)**

Turiello moves to compel JCI to supplement its responses to Interrogatory Nos. 1, 4, and 19-1, as well as RFA No. 1, claiming that JCI's current responses "fail[] to describe its calculation of damages or identify all expenses actually incurred for FARS remediation." D.I. 120 at 2. Turiello contends that it was "inappropriate" for JCI to rely in its response on "340 documents (1,937 pages)," rather than provide a narrative response. D.I. 120 at 2. In JCI's view, JCI's responses are sufficient because it "produced a spreadsheet with line-by-line detail of exactly how it calculated its FARS remediation damages" to "support its written response." D.I. 121 at 2.

The Court agrees with JCI. JCI's narrative responses included calculations of different categories of damages, which encompass the individual components that led to the final calculation. *See* D.I. 120-1, Ex. 7. Moreover, JCI explained that it "regularly supplements its productions to include new invoices, Statements of Work, and other supporting documents." D.I. 121 at 2. JCI's narrative responses, the spreadsheet it produced, and its continued supplementation of discovery, all give Turiello sufficient information to determine how JCI calculated its damages. Thus, Turiello's motion to compel is denied with respect to Interrogatory Nos. 1, 4, and 19-1, and RFA No. 1.

**E.      FARS Testing and Problems (Interrogatory Nos. 3 and 6)**

Turiello moves to compel JCI to supplement its responses to Interrogatory Nos. 3 and 6, which generally ask JCI to describe "testing, analysis, evaluation, or validation of FARS" and to

5

describe "each and every FARS problem" of which JCI is aware. *See* D.I. 120-1, Ex. 5. JCI contends that it has provided "detailed accounts of FARS testing and problems it has discovered since acquiring RAS in 2022," and has furthermore "made a 90,551-document production" with which JCI intends to "supplement its responses." D.I. 121 at 2-3.

The Court agrees with JCI that its responses to Interrogatory Nos. 3 and 6 adequately provide detailed accounts regarding its testing of FARS. Specifically, in its response to Interrogatory No. 3, JCI described the dates of testing (on a daily basis from August to December 2023), the locations of testing (Cranston, Rhode Island, and Montgomery Ridge Apartments, Texas), and the personnel involved (Sean Cutting, James Leuzarder, and Jeremie LeClair). D.I. 121-1, Ex. B, at 10. In response to Interrogatory No. 6, JCI provided a detailed list of all the problems it has identified with respect to FARS. *Id.* at 13-14. In addition, JCI noted its intention to further supplement its responses to Interrogatory Nos. 3 and 6 through its recent production of testing documents. D.I. 121 at 2-3. Thus, the Court denies Turiello's motion to compel with respect to Interrogatory Nos. 3 and 6.

### F.    Sales Tax Investigation (Interrogatory Nos. 5, 15, 19-2, and 19-4; RFA Nos. 2 and 4)

Turiello moves to compel JCI to supplement its responses to Interrogatory Nos. 5, 15, 19-2, and 19-4, along with RFA Nos. 2 and 4. Turiello makes several contentions regarding JCI's responses. For instance, Turiello states that JCI "fails to answer" Interrogatory No. 5, "instead describing efforts to obtain certificates showing CIs [(Certified Installers)] were exempt from paying sales tax." D.I. 120 at 2. For Interrogatory No. 15, Turiello objects that "JCI identified two tax firms (without naming individuals at those firms) and everyone identified in Turiello's initial disclosures (many who know nothing about sales tax) while omitting tax authorities

6

contacted by JCI and dates of awareness." *Id.* Lastly, Turiello takes issue with JCI's failure to provide sufficient explanations for its denials to RFA Nos. 2 and 4.

### 1.    Interrogatory No. 5

With respect to Interrogatory No. 5, the Court is unconvinced that a dispute exists. Interrogatory No. 5 asks JCI to describe the efforts it took to confirm whether RAS's Certified Installers paid sales taxes for products and services. D.I. 121-1, Ex. D, at 1-2. JCI's supplemental response is adequate. In its response, JCI detailed an "extensive project guided by Deloitte" wherein Deloitte investigated "whether RAS's Certified Installers had paid sales taxes. JCI's response additionally referred Turiello to a production of a "sample of lists of contacted RAS customers" regarding their tax exemption status. *Id.* at 2-3. JCI also clarified that JCI will "supplement this Interrogatory if additional lists of contacted customers are identified." *Id.* at 3. It is unclear what more Turiello seeks at this time, given JCI's continued cooperation in investigating the information that Turiello seeks and providing said information via supplementary responses. Thus, the Court denies Turiello's motion to compel with respect to Interrogatory No. 5.

### 2.    Interrogatory No. 15

Interrogatory No. 15 asks JCI to identify individuals aware of unpaid sales taxes by RAS. D.I. 121-1, Ex. B, at 24. JCI provided a partially complete response, identifying several individuals listed in its initial disclosures as individuals that would have knowledge relevant to RAS's sales and use tax issues. *Id.* at 25. However, JCI failed to identify any individuals that served as its external tax advisors in relation to RAS's sales and use tax issues, as well as individuals from the finance team that "maintained responsibility for sales and use tax compliance." *Id.* Listing entire firms and teams, and leaving Turiello to try to identify the correct individuals, is insufficient. Thus, with respect to Interrogatory No. 15, the Court compels JCI to name the individuals that served as

7

its outside advisors to contact state tax authorities, as well as individuals from its finance team that have knowledge responsive to Interrogatory No. 15.

### 3. RFA No. 4 and Corresponding Interrogatory No. 19-4

Regarding RFA No. 4, the Court is again unconvinced that a dispute exists. Turiello asks JCI to admit that "prior to November 2024 [JCI] never communicated with any certified installers relating to sales taxes paid or not paid." D.I. 121-1, Ex. E, at 7. JCI denied the RFA, and explained in its corresponding response to Interrogatory No. 19-4 that the denial was "because it communicated with Certified Installers regarding sales taxes relating to FARS prior to November 2024." D.I. 121-1, Ex. B, at 30. Those responses are sufficient. Thus, the Court denies Turiello's motion to compel with respect to RFA No. 4 and the corresponding Interrogatory No. 19-4.

### 4. RFA No. 2 and Corresponding Interrogatory No. 19-2

With respect to RFA No. 2, Turiello asks JCI to admit that "RAS is not required to pay sales tax for FARS where it already paid sales tax on every FARS component it purchased for a FARS." D.I. 121-1, Ex. E, at 6. JCI objected that "the Request calls for a legal conclusion," and further responded that it "lacks sufficient knowledge or information as to whether RAS 'already paid sales tax on every FARS component it purchased for a FARS.'" *Id.* The Court agrees with JCI that RFA No. 2 calls for a legal conclusion regarding whether RAS is required to pay sales tax for FARS. Thus, the Court denies Turiello's motion to compel with respect to RFA No. 2 and Interrogatory No. 19-2.

### G. Post-Close Disputes (Interrogatory No. 18)

Turiello moves to compel JCI to describe any post-close disputes with other persons, "including disputes following a merger, acquisition, asset purchase, or other change of control transaction." D.I. 121-1, Ex. B, at 27. Turiello claims that this interrogatory is "relevant to Turiello's contention that JCI's claims are in bad faith and reflect a pattern of improperly

8

withholding funds and bullying sellers post-closing." D.I. 120 at 3. JCI contests the relevance of this interrogatory as to the issue of "whether JCI is entitled to indemnification from Turiello for the FARS defects and RAS's tax liabilities." *Id.* The Court agrees with JCI that disputes completely unrelated to this action are irrelevant. Furthermore, to the extent any disputes *may* be relevant to a general pattern of bad faith, discovery regarding such disputes is not proportional to the needs of this case because this action is limited to FARS defects and RAS's tax liabilities. Thus, the Court denies Turiello's motion to compel with respect to Interrogatory No. 18.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Turiello's motion to compel with respect to RFP Nos. 73 and 75-79 and Interrogatory No. 15, and GRANTS-IN-PART Turiello's motion to compel with respect to RFP General Objection No. 8. The Court DENIES Turiello's motion to compel with respect to RFP No. 105, Interrogatory Nos. 1, 3, 4, 5, 6, 18, 19-1, 19-2, and 19-4, and RFA Nos. 1, 2, and 4.

WHEREFORE, at Wilmington this 27th day of July 2026, **IT IS HEREBY ORDERED** that:

1.    Plaintiffs Anthony Turiello and The Turiello Living Trust Dated December 18, 2008's (together, "Plaintiffs") request to compel Defendants Johnson Controls, Inc. and Central Sprinkler LLC (together, "Defendants") to supplement their responses to Request for Production ("RFP") General Objection No. 8 is **GRANTED-IN-PART**. Defendants must collect documents between October 1, 2021 and March 1, 2022 and produce relevant, non-privileged documents in that timeframe to the extent that such documents discuss, concern, or refer or relate to the functionality of the Firefighter Air Replenishment System ("FARS").

9

2.  Plaintiffs' request to compel Defendants to supplement its responses to RFP Nos. 73 and 75-79 is **GRANTED.**  Defendants must produce non-privileged documents responsive to RFP Nos. 73 and 75-79.

3.  Plaintiffs' request to compel Defendants to supplement its responses to Interrogatory No. 15 is **GRANTED.** Defendants must name the individuals that served as its outside advisors to contact state tax authorities, as well as individuals from its finance team that have knowledge responsive to Interrogatory No. 15.

4.  Plaintiffs' request to compel Defendants to supplement its responses to RFP No. 105, Interrogatory Nos. 1, 3, 4, 5, 6, 18, 19-1, 19-2, and 19-4, and RFA Nos. 1, 2, and 4 is **DENIED**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

10